IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>CHRISTOPHER WAYNE SIMPSON,<br><br>                Defendant. | ORDER and MEMORANDUM DECISION<br><br><br><br><br>Case No. 2:08-CR-554 CW |

      Defendant Christopher Wayne Simpson is charged with two counts: possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, and possession with intent to distribute a substance containing detectable amount of heroin.  This motion to suppress arises out of the allegedly improper detention of Mr. Simpson by Trooper Nick Bowles of the Utah Highway Patrol.  Mr. Simpson contends that Trooper Bowles lacked reasonable suspicion to detain Mr. Simpson beyond the scope of the initial traffic stop, making the ensuing search illegal.  Mr. Simpson moves for all evidence obtained during the search to be suppressed.

**BACKGROUND**

      Trooper Bowles had eight years of experience in law enforcement at the time of the events in question.  On July 30, 2008, Trooper Bowles was working on a drug interdiction assignment with Cica, his drug-sniffing canine.  Trooper Bowles was parked on the side of

Interstate 80 near Salt Lake City, Utah, which, according to Trooper Bowles, is a major drug corridor in Utah. At about 5:50 p.m., Trooper Bowles noticed Mr. Simpson's Lexus vehicle driving eastbound. According to Trooper Bowles, the car attracted his attention because it was going significantly slower than the speed limit, had the windows rolled down despite the 95 degree heat, and appeared to be dragging something beneath it. Trooper Bowles began to follow Mr. Simpson for closer observation and then pulled Mr. Simpson over after Mr. Simpson twice made lane changes without the required two second delay after signaling. Mr. Simpson pulled over into the emergency lane, relatively close to the flow of traffic.

When he walked up to Mr. Simpson's car, Trooper Bowles saw butane lighter refills in the rear pocket of the front passenger seat and a butane lighter in the ashtray. He also saw a radar detector on the floor, pushed partly under the seat, as well as a package of energy pills when Mr. Simpson opened the glove box. Trooper Bowles instructed Mr. Simpson to get out of the Lexus and sit in the patrol car.

Soon after Mr. Simpson entered the patrol car, Trooper Bowles noticed that Mr. Simpson's whole body was trembling. Trooper Bowles told Mr. Simpson after a few moments that Mr. Simpson would only be given a warning for the traffic violation. According to Trooper Bowles, he did this to see if it would release the tension Mr. Simpson seemed to be experiencing. Trooper Bowled stated that this information did not make Mr. Simpson appear less nervous.

Trooper Bowles then began to ask Mr. Simpson about his travels. Mr. Simpson told Trooper Bowles that he had driven from his home in Omaha, Nebraska to Reno, Nevada to visit a friend for a few days. He said he did not visit a casino, but had gambled only at the friend's house. Trooper Bowles indicated that he was suspicious of this story because it seemed odd to

travel to Reno and not go out.  Moreover, while Mr. Simpson said he had stayed with his friend for a few days, by Trooper Bowles' calculation, Mr. Simpson could have stayed at most one night in Reno.  That is, Mr. Simpson said he had left Omaha late Saturday or early Sunday and driven about two and a half days to Reno, which Trooper Bowles took to mean that he had arrived in Reno on Tuesday.   Trooper Bowles stopped Mr. Simpson many hours' drive outside of Reno on Wednesday.  Mr. Simpson also told Trooper Bowles that he did not have much money.  Trooper Bowles got the feeling Mr. Simpson was vague in answering other questions.

Trooper Bowles testified that while he spoke to Mr. Simpson in the car, he saw Cica trying to shred his "reward toy."  Trooper Bowles said that the only other time Cica had displayed that behavior was when there was a person in the patrol car who was found with marijuana.

 Trooper Bowles verbally warned Mr. Simpson for the lane change violations, having run out of paper to print a citation.  Trooper Bowles then told Mr. Simpson he was free to leave, but upon learning that Mr. Simpson had previously been charged in Nebraska for transporting drugs, Trooper Bowles detained Mr. Simpson.

Trooper Bowles asked Mr. Simpson for permission to search the Lexus, and Mr. Simpson declined.  Despite this refusal, Trooper Bowles had Cica search exterior of the Lexus.  The first time sniffing around the car, Cica did not alert.  Trooper Bowles then "detailed" Cica to again sniff particular areas.  Cica then alerted to the presence of drugs.  After Cica did so, Trooper Bowles searched the car and found about a kilogram of methamphetamine, 40 grams of heroin, eight syringes loaded with heroin, marijuana, prescription pills and drug paraphernalia.

## ANALYSIS

Mr. Simpson has conceded that the initial traffic stop based on a traffic violation was justified. He argues instead that Trooper Bowles did not have reasonable suspicion to detain him after he had told him he was free to leave. The government responds that Trooper Bowles was justified in detaining Mr. Simpson beyond the initial stop.

A traffic stop may be prolonged in two circumstances: if the officer "has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring" or "if the initial detention has become a consensual encounter." United States v. Hunnicutt, 135 F.3d 1345, 1349 (10th Cir.1998). Here, the government concedes that the encounter was not consensual. Instead, the government points to the following facts as forming a basis for Trooper Bowles' reasonable suspicion:

1. Mr. Simpson was driving well below the speed limit;

2. Mr. Simpson had his windows rolled down on a very hot day;

3. Mr. Simpson appeared to be avoiding Trooper Bowles by twice changing lanes;

4. Mr. Simpson had butane torch lighter and refills in the car;

5. Mr. Simpson had energy pills in the glove box;

6. Mr. Simpson had a radar detector that it looked like he was hiding;

7. Mr. Simpson was so nervous his whole body was shaking;

8. Mr. Simpson's nervousness did not subside when Trooper Bowles told him he was only going to issue a warning;

9. Mr. Simpson said he had stayed in Reno a few days, but given the time frame he gave Trooper Bowles, the most he could have stayed was one night;

10. Mr. Simpson's trip was economically infeasible, given the high price of gas, the distance traveled and the amount of time Mr. Simpson spent in Reno;

11. Mr. Simpson gambled at his friend's house instead of the casinos;

12. Mr. Simpson seemed vague in answering questions;

13. Cica tried to shred his reward toy, which Trooper Bowles had only observed once before when there was a person in the car who was found with marijuana;

14. Mr. Simpson was driving on a major drug corridor from a place where drugs often come from to a place drugs often go to and

15. Mr. Simpson had a previous drug running charge.

Trooper Bowles testified that, in his experience, many of these facts are consistent with the illegal use and transport of drugs. Mr. Simpson offers an innocent explanation for all of these facts and cites to various cases in which courts have found that some of these facts should be disregarded in the reasonable suspicion analysis. He asserts that the cited facts simply do not add up to reasonable suspicion.

In developing reasonable suspicion, officers are allowed "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." U.S. v. Guerrero, 472 F.3d 784, 797 (10th Cir. 2007) (quoting United States v. Arvizu, 534 U.S. 266, 273 (2002) (citations and quotations omitted). The Guerrero court further explained that:

> "The evaluation is made from the perspective of the reasonable officer, not the reasonable person," United States v. Quintana-Garcia, 343 F.3d 1266, 1270 (10th Cir. 2003). The Supreme Court has instructed that we not examine each factor adding up to reasonable suspicion individually, but that we evaluate how convincingly they fit together into a cohesive, convincing picture of illegal conduct. In Arvizu, the Court rejected what it

called a "divide-and-conquer analysis," noting that reasonable suspicion may exist even if "each observation" is "susceptible to an innocent explanation." Arvizu, 534 U.S. at 275. Id. Further, "courts must also defer to the 'ability of a trained law enforcement officer to distinguish between innocent and suspicious actions.'" United States v. Santos, 403 F.3d 1120, 1124 (10th Cir. 2005) (citation omitted.)

The court views Mr. Simpson's argument as exactly the kind of "divide and conquer" warned of by the Supreme Court in Arvizu. It is true, as Mr. Simpson argues, that several of the facts relied on by the government would not alone support a finding of reasonable suspicion. And the court is also wary of attempts by the government to add up wholly innocent facts to try to bolster an otherwise unjustifiable conclusion of reasonable suspicion. See, e.g., United States v. Salzano, 158 F.3d 1107, 1111-15 (10th Cir. 1998) (finding no reasonable suspicion despite various bases offered by government). In this case, however, the totality of the circumstances gave Trooper Bowles reasonable suspicion to detain Mr. Simpson. Trooper Bowles was allowed to make reasonable judgments based on his experience in drug enforcement to assess the circumstances he encountered at the time. This conclusion holds even though many of the facts are capable of innocent explanation.

Various considerations support this conclusion. First, Mr. Simpson's nervousness could be explained by his having to walk close to traffic and sitting in the patrol car close to a dog. But Trooper Bowles also reasonably could have taken the nervousness to be suspicious, especially because it was extreme and did not go away. See, e.g., Santos, 403 F.3d at 1127 ("Only extraordinary and prolonged nervousness can weigh significantly in the assessment of reasonable suspicion."). Further, Mr. Simpson's vagueness and the seeming contradictions and

implausibility of his story were factors that have weight in the reasonable suspicion analysis.  See id. at 1131.  Moreover, the court may consider Mr. Simpson's previous conviction for transporting drugs as another factor in the inquiry in conjunction with the other facts.  See id. at 1132-33.  Finally, Cica's trying to shred his reward toy was unusual enough to be considered in by Trooper Bowles in his analysis.  While the remaining facts cited by the government range from weak (such as the presence of a butane lighter and refills) to nearly weightless (the drug corridor argument), the court views them as part of the totality of the circumstances.  In sum, the court believes that Trooper Bowles had reasonable suspicion to detain Mr. Simpson beyond the initial traffic stop.

## ORDER

For the reasons set forth above, Mr. Simpson's Motion to Suppress (Dkt. No. 16) is DENIED.

DATED this 27th day of February, 2009.

BY THE COURT:

_____
Clark Waddoups
United States District Judge