IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER WAYNE SIMPSON<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**<br><br>Case No. 2:08-cr-00554-CW<br><br>Judge Clark Waddoups |

Before the court is Defendant Christopher Wayne Simpson's motion for compassionate release, which seeks a reduction, under 18 U.S.C. § 3582(c)(1)(A), of the life sentence Simpson received in June 2009 after being convicted by a jury of possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(b)(1), and possession of heroin, in violation of 21 U.S.C. § 844. Simpson argues that his age, time of service, deteriorating health, and disparities between the sentence he received and the sentence he would have been subject to after the sentencing reforms made by the First Step Act of 2018 constitute extraordinary and compelling reasons that warrant a reduction of his sentence.

After carefully reviewing the record and the arguments of counsel, the court agrees and grants Simpson's motion for the reasons stated herein.

**Factual and Procedural Background**

On July 30, 2008, Simpson was stopped for a traffic violation by a Utah Highway Patrol officer. (*See* Presentence Investigation Report ("PSR") at 2 (¶ 6), ECF No. 117-2.) During the stop,

the officer became suspicious that Simpson was engaged in illegal activity and conducted an exterior search of Simpson's vehicle with a drug-detection dog. (*Id.*) The external search confirmed the officer's suspicions and a subsequent internal search of Simpson's vehicle uncovered approximately one kilogram of crystal methamphetamine, 40 grams of heroin, several prescription pills, a marijuana joint, and six syringes containing heroin. (*Id.*)

Simpson was subsequently charged with one count of possession with intent to distribute 500 grams or more of methamphetamine and one count of possession with intent to distribute heroin, both in violation of 21 U.S.C. § 841(a). (*See* Indictment, ECF No. 8.)

After unsuccessfully moving to suppress evidence that was discovered during the search of his vehicle, Simpson proceeded to trial on both charges, where a jury convicted him of possession with intent to distribute more than 500 grams of methamphetamine and for simple possession of heroin. (*See* Verdict, ECF No. 61.)

Because he had been convicted of two or more felony drug offenses before being charged in this case, Simpson was subject to a mandatory life sentence pursuant to the then enacted version of Section 841(b)(1)(A). Accordingly, the court entered a sentence of life imprisonment and 120 months of supervised release, as required by law, on June 30, 2009. (Judgment, ECF No. 76.) Mr. Simpson's conviction was later upheld on appeal. *See United States v. Simpson*, 609 F.3d 1140 (10th Cir. 2010).

On or around February 21, 2022, Simpson submitted a request to his warden for a reduction in his sentence under Section 3582(c)(1)(A). (BOP Records at 134, ECF No. 132-2.) As grounds for the request, Simpson cited his age, declining health, and a disparity in his sentence created by

sentencing reform provisions of the First Step Act. (*Id*.) Simpson's request was denied on March 4, 2022. (*Id*. at 135.)

On April 7, 2022, Simpson filed a pro se motion with the court seeking compassionate release on similar grounds to those raised in his request to the warden. (ECF No. 113.) Simpson's initial pro se motion was later supported by a supplemental memorandum filed by Simpson's counsel, which elaborated on the grounds for compassionate release raised in the initial motion. (ECF No. 116.)

The government opposes Simpson's motion, arguing that there is not sufficient evidence that Simpson's medical condition is significant enough to warrant a finding of extraordinary and compelling reasons for a sentence reduction, that Simpson's refusal to allow a medical exam or to receive treatment precludes a finding of extraordinary and compelling reasons, and that Simpson remains a danger to the safety of the community.

## Analysis

I.     **Simpson's Motion is Procedurally Proper.**

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but that rule of finality is subject to a few narrow exceptions." *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021) (citation omitted, internal alteration omitted). One exception is provided in 18 U.S.C. § 3582(c)(1)(A), which allows courts to reduce a term of imprisonment upon a finding of extraordinary and compelling reasons.

The First Step Act amended Section § 3582(c)(1)(A) "to allow defendants to seek relief under the statute on their own, rather than depending on the Director of the BOP." *United States v. Hald*, 8 F.4th 932, 937 (10th Cir. 2021). A defendant may file such a motion after he has "fully

3

exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or "30 days after the warden . . . received [the defendant's] request that the warden make a motion on [the defendant's] behalf, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

There is no dispute that Simpson filed a request for a reduction in his sentence with his warden on or around February 21, 2021, (BOP Records at 134, ECF No. 132-2), and that his warden denied that request on March 4, 2022, (*id.* at 135). Thereafter, Simpson filed his current motion for compassionate relief on April 7, 2022. (ECF No.1.) Accordingly, Simpson satisfied the exhaustion requirements set forth in Section 3582(c)(1)(A) before filing the current motion and the motion is procedurally proper.

**II.     Compassionate Release**

The First Step Act granted sentencing courts authority to reduce an otherwise final term of imprisonment for "extraordinary and compelling reasons" upon a motion by the defendant. 18 U.S.C. § 3582(c)(1)(A)(i) provides, in relevant part:

> (1)     In any case—
>
>> (A)     the court . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>>
>>> (i)     extraordinary and compelling reasons warrant such a reduction;
>>> . . . .
>>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

4

Thus, the statutory requirements for sentence reduction are that the court (1) find extraordinary and compelling reasons for the reduction, (2) consider the relevant sentencing factors under 18 U.S.C. § 3553(a), and (3) ensure that any reduction is consistent with applicable Sentencing Commission policy statements. *Hald*, 8 F.4th at 937 (holding that the "plain language of [§ 3582(c)(1)] creates a 'three-step test'") (citation omitted). The Tenth Circuit has reaffirmed that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others." *Id.* (quotations and citations omitted). Granting such a motion, however, requires a district court to "address all three steps." *Id.* (quotations and citation omitted).

As discussed further below, however, the Sentencing Commissions has, to date, not issued any policy statements that are applicable to motions for compassionate release that are brought directly by defendants. Thus, until the Sentencing Commissions promulgates a policy statement regarding when compassionate release is appropriate when a defendant brings a motion under Section 3582(c)(1)(A),[1] the third prong of the test outlined in *Hald* is not applicable. The test for determining whether compassionate release is warranted upon a defendant-brought motion, then, effectively rests on two considerations: (1) whether extraordinary and compelling reasons exist for reducing the defendant's sentence and (2) whether reducing a movant's sentence

---

[1] The Sentencing Commission has recently been able to meet with a quorum and, on February 2, 2023, promulgated proposed amendments to the Sentencing Guidelines that include policy statements regarding when extraordinary and compelling reasons for a sentence reduction exist when a motion for compassionate release is brought directly by a defendant. *See* Sentencing Guidelines for United States Courts, 88 Fed. Reg. 7180-01, 7184-85 (proposed Feb. 2, 2023.) As of the date of this decision, however, no formal policy statements concerning such motions has been officially adopted.

5

would be consistence with the factors set forth in Section 3553(a).

      **A.**      **Extraordinary and Compelling Reasons**

The phrase "extraordinary and compelling reasons" is not defined in Section 3582(c)(1)(A). However, Congress has directed the United States Sentencing Commission to "describe[, for purposes of Section 3582(c)(1)(A),] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

Since Congress amended Section 3582 through the First Step Act to allow defendants to seek a reduction in their sentence directly, however, the Sentencing Commission has not had a quorum and, as a result, has been unable to promulgate any new policy statements regarding what constitutes extraordinary and compelling reasons for a sentence reduction when a motion is filed directly by a defendant. *See United States v. McGee*, 992 F.3d 1035, 1049-50 (10th Cir. 2021). Because the Sentencing Commission's current policy statement regarding the grounds for reducing a sentence applies, by its express language, only to motions brought by the Director of the Bureau of Prisons, the Tenth Circuit has held that it is not applicable to motions for compassionate release brough directly be defendants after enactment of the First Step Act. *Id*. at 1050 ("[T]he Sentencing Commission's existing policy statement is applicable only to motions for sentence reductions filed by the Director of the BOP, and not to motions filed directly by defendants."). As a result, the Sentencing Commission's policy statement "cannot constrain district courts' discretion to consider whether any reasons are extraordinary or compelling." *Id*. (citation omitted).

Because the Sentencing Commission's current policy statement regarding what constitutes extraordinary and compelling reasons for a sentence reduction is not applicable to motions for

compassionate release brought directly by defendants, the Tenth Circuit has recognized that there may be reasons outside the scope of the Sentencing Commission's current policy statement that warrant a reduction of sentence under Section 3582(c)(1)(A). Nevertheless, the sentencing commission's policy statements concerning compassionate release motions brought by the BOP Director may be considered by the court when evaluating whether extraordinary and compelling reasons for a sentence reduction exist. *See United States v. Carr*, Case No. 20-1152, 2021 WL 1400705 at *4 (10th Cir. Apr. 14, 2021) (unpublished) (district court had discretion to determine that § 1B1.13 provided the best definition of extraordinary and compelling circumstances).

Significant to this case is the Tenth Circuit's recent decision in *United States v. Maumau*, 993 F.3d 821 (10th Cir. 2021). In *Maumau*, the defendant was convicted by a jury of a number of crimes arising out of his commission of three armed robberies, including three counts of violating Section 924(c). *Id*. at 824-26. At the time of Maumau's conviction, the district court was required to impose "a 25-year mandatory minimum consecutive sentence for 'a second or subsequent conviction under [§ 924(c)],' even if the second and subsequent convictions were part of the same prosecution as the first such conviction." *Id*. at 826 (alteration in original). As a result, Maumau's three Section 924(c) convictions required the court to sentence Maumau to 57-years imprisonment.[2] *Id*.

In December 2018, Congress passed the First Step Act, which, among other things, amended Section 924(c) to eliminate the possibility of "stacked" mandatory minimum sentences upon multiple Section 924(c) convictions in the same prosecution. *Id*. Importantly, however, the First Step Act

---

[2] Maumau's sentence was later reduced to 55 years for reasons that are not pertinent to the current motion. *See Maumau*, 993 F.3d at 826.

7

expressly limited the retroactivity of its amendments to Section 924(c) to "any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." *Id*. (citation omitted). Therefore, because Maumau was sentenced before enactment of the First Step Act, the First Step Act's elimination of stacked sentencing did not apply to him directly.

Nevertheless, Maumau filed a motion for compassionate release arguing that the disparity between the sentence he received as a result of Section 924(c)'s stacking provisions, and the sentence he would have received if he had been sentenced after the elimination of sentence stacking by the First Step Act, constituted extraordinary and compelling reasons for a sentence reduction under Section 3582(c)(1)(A). The district court agreed and concluded that the disparity between Maumau's pre- and post-First Step Act sentences, when considered along with Maumau's young age at the time of his conviction, the fact that his sentence was much longer than some of his other co-defendants that committed similar crimes, the fact that he had a strong support network from his family, and that he had pending opportunities for employment, supported a finding that extraordinary and compelling reasons for a sentence reduction under Section 3582(c)(1)(A) existed. *Id*. at 828-29. The district court reduced Maumau's sentence to time served, plus a three-year term of supervised release. *Id*. at 829.

On appeal, the Tenth Circuit affirmed, holding that, while the First Step Act did not apply the amendments to Section 924(c) retroactively, it was within the district court's discretion to conclude that the sentencing disparity created in Maumau's case by the First Step Act's amendments to Section 924(c), when considered along with other factors, constituted extraordinary and compelling reasons for a sentence reduction under Section 3582(c)(1)(A). *Id*. at

837.

In a concurring opinion, Chief Judge Tymkovich cautioned that the court's holding in *Maumau* "does not give district courts carte blanche to retroactively apply in every instance the amendments to the stacking provisions in 18 U.S.C. § 924(c)." *Id*. at 838 (Tymkovich, C.J., concurring). "A long sentence derived from stacking cannot, by itself, be an 'extraordinary and compelling' reason for sentence reduction." *Id*. "Instead, a district court may consider the legislative change to the stacking provision only in the context of an individualized review of a movant's circumstances." *Id*. And "[c]ases in which those circumstances warrant a finding of 'extraordinary and compelling reasons' should be relatively rare." *Id*.

As was the case in *Maumau*, the sentencing reform provisions of the First Step Act have created a disparity between the mandatory life sentence that Simpson received when he was convicted in 2009 and the sentencing requirements he would be subject to if he were sentenced today. When Simpson was sentenced, prior to the First Step Act, the Controlled Substances Act, 21 U.S.C. § 841(b)(1)(A), provided that "[i]f any person commits a violation of this subparagraph . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release." Because Simpson had previously committed two or more felony drug offensive at the time of his conviction in this case, Section 841(b)(1)(A) required the court to impose a life sentence.

The First Step Act, however, made two significant changes to the sentencing provisions in Section 841(b)(1)(A).

First, rather than imposing an enhanced sentence when a defendant had multiple prior "felony drug offense" convictions, the First Step Act modified Section 841(b)(1)(A) to impose a

9

sentence enhancement only when a defendant had one or more prior "serious drug felony or serious violent felony" convictions. 21 U.S.C. § 802(44) defines "felony drug offense" to mean, for purposes of Section 841, "an offense that is punishable by *imprisonment for more than one year* under any law of the United States or of a State or foreign country that prohibits or restrict conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances." (Emphasis added). In contrast, Section 802(57) defines "serious drug felony," for purposes of Section 841, by adopting the definitions of "serious drug offense" or "violent felony" set forth in 18 U.S.C. § 924(e)(2)—the Armed Career Criminal Act (ACCA). Under ACCA, the term "serious drug offense" is defined to include "an offense under State law, involving the manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a *maximum term of imprisonment of ten years or more* is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added). Thus, after the First Step Act, some prior offenses that would have previously exposed a defendant to an enhanced sentence under Section 841(b)(1)(A) would no longer qualify as a basis for imposing a recidivist enhancement.

The First Step Act, however, also added the category of "serious violent felonies" to the list of prior offenses that would subject a defendant to an enhanced sentence under Section 841(b)(1)(A). Section 801(58) defines "serious violent felony" by incorporating the felonies listed in 18 U.S.C. § 3559(c)(2), many of which are non-drug offenses. Therefore, the First Step Act also incorporated some new offenses into the list of those that would qualify a defendant for an enhanced sentence under Section 841(b)(1)(A) that would not have qualified as a basis for a recidivist enhancement at the time Simpson was sentenced.

Second, the First Step Act reduced the mandatory minimum sentences that a defendant with prior qualifying offenses would be exposed to if convicted under Section 841(a). More specifically, the First Step Act reduced the mandatory minimum sentence that a defendant with one prior qualifying offense would receive from 20 to 15 years, and it reduced the mandatory minimum sentence that a defendant with two or more prior qualifying offenses would receive from "life imprisonment without release" to "a term of imprisonment of not less than 25 years." *See* First Step Act, Pub. L. No. 115-391, § 401(a)(1), 132 Stat 5194, 5220 (2018).

Additionally, as in *Maumau*, Congress expressly indicated in the First Step Act that the amendments to the sentencing provisions in Section 841 were not to be applied retroactively. *See id*. at § 401(c) ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment.").

The Tenth Circuit has held that, as in *Maumau*, district courts may consider whether a sentencing disparity created by the First Step Act's amendments to Section 841, when consider in combination with a defendant's unique circumstances, may constitute an extraordinary and compelling reason for a sentence reduction under Section 3582(c)(1)(A). *McGee*, 992 F.3d at 1045-48.

Here, Simpson argues that the disparity between the mandatory sentencing requirements he was subjected to before the First Step Act and the sentencing requirements he would be subject to if he were sentenced today are significant and warrants a finding of extraordinary and compelling circumstances. He argues that none of the prior felony drug offenses that supported his life sentence under the pre-First Step Act version of Section 841(b)(1)(A) would qualify as a basis

11

for an enhanced sentence under the post-First Step Act version of the statute. Accordingly, Simpson argues that he would only be subject to a mandatory minimum sentence of 10 years for the offenses he was convicted of if he was sentenced today.

The government has provided no response, and appears not to contest, Simpson's analysis of the impact that the First Step Act would have on the sentencing requirements that Simpson would be subject to if he were sentenced today. A review of the record, however, shows that Simpson likely had at least one prior conviction that would qualify as a basis for imposing an enhanced sentence under the post-First Step Act version of Section 841. According to Simpson's presentence report, Simpson was convicted and sentenced to more than 12 months imprisonment for armed bank robbery in October 1986. (*See* PSR at 6 (¶ 30), ECF No. 117-2.) Such a conviction would most likely be considered a "serious violent felony" under the post-First Step Act version of Section 841, subjecting Simpson to a mandatory minimum sentence of at least 15 years. *See* 18 U.S.C. § 3559(c)(2) (defining "serious violent felony" to include "robbery (as described in section 2111, 2113, or 2118)"); 18 U.S.C. § 2113 (criminalizing bank robbery).[3]

Nevertheless, regardless of whether Simpson would be subject to an enhanced sentence under the post-First Step Act version of Section 841(b)(1)(A) or not, the court agrees that the sentencing reforms that were enacted by the First Step Act created a significant disparity between the life sentence that the court was required to impose at the time of his conviction and the sentencing requirements he would be subject to if he were sentenced today.

---

[3] There is insufficient information in the record to determine whether any of Simpson's other prior offenses would qualify as a basis for imposing an enhanced sentenced under the current version of Section 841(b)(1)(A).

This sentencing disparity may provide a basis for the court to find that extraordinary and compelling reasons for a sentence reduction exist if Simpson also shows that there are other circumstances that also warrant compassionate release. To that end, Simpson has argued that his age and declining health justify a finding of extraordinary and compelling reasons.

As discussed above, the court is not required to apply the Sentencing Commission's policy statements when considering whether extraordinary and compelling reasons for a sentence reduction exist in this case. The court finds, however, the Sentencing Commission's guidance on the circumstances that constitute extraordinary and compelling reasons for a sentence reduction with respect to motions brought by the BOP Director to be helpful when considering the impact of Simpson's age and declining health.

In the application notes to Section 1B1.13 of the Sentencing Guidelines, the Sentencing Commission has identified several circumstances that constitute extraordinary and compelling reasons for a sentence reduction when a motion for compassionate release is brought by the Director of the BOP. In application note 1(B), the Sentencing Commission identifies the "Age of the Defendant" as an extraordinary and compelling reason for a sentence reduction when "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."

Simpson is currently 66 years old and has served more than 10 years of his sentence in this case. (*See* PSR at 2, ECF No. 117.) Therefore, his circumstances would qualify as an extraordinary and compelling reason for a sentence reduction under the application note 1(B) of the Sentencing

Commission's current policy statement if he is also experiencing a "serious deterioration in physical or mental health because of the aging process."

Simpson argues that he is currently suffering from Hepatitis C and Parkinson's Disease, which are serious medical conditions that will impact his health as he ages. There is no dispute that Simpson has Hepatitis C. And while the government argues that Simpson has never actually been diagnosed as having Parkinson's Disease, there is no dispute that Simpson's medical records show that Simpson experiences involuntary tremors that are sometimes severe. (*See, e.g.*, BOP Records at 68, ECF No. 132-2 (showing that Simpson is experiencing severe involuntary tremors in his jaw and other tremors in other parts of his face and extremities).)

The government argues that none of Simpson's medical conditions are terminal or serious enough to impact his ability to provide self-care within the environment of a correctional facility. Even if the government is correct, however, such limitations only apply under the Sentencing Commission's policy statement when compassionate release is sought on the grounds of a medical condition alone. *See* Sentencing Guidelines § 1B1.13, Application Note 1(A) (describing the circumstances under which a medical condition constitutes an extraordinary and compelling reason for a sentence reduction). Because the Sentencing Commission's guidance on aging does not impose such limits, the government's arguments regarding the severity of the impact Simpson's medical conditions have on his current ability to administer self-care are irrelevant to determining whether extraordinary and compelling reasons exist under application note 1(B).

The government also argues that Simpson's refusal to undergo a medical examination to determine whether he is suffering from Parkinson's Disease, and his refusal to receive treatment, should preclude the court from finding extraordinary and compelling reasons for a sentence

14

reduction. The government cites no authority, however, that precludes granting a motion for compassionate release when a defendant declines a medical examination and there is other evidence in the record of deteriorating health.

Moreover, while there is some evidence that Simpson has declined testing and treatment for certain medical conditions, (*See, e.g.*, BOP Records at 12-14, ECF No. 132-2), the record also shows that Simpson has accepted treatment when he has been impacted by a medical condition. For example, Simpson's medical records show that Simpson has accepted medication to help control his tremors in the past. (*See id*. at 58, 60, 67, and 85.) And while the record shows that Simpson refused further medications for his tremors for a time when he determined that they did not help, (*see id*. at 58), it appears that he is currently being prescribed another medication to help with the tremors (*id*. at 136-37).

While the court is concerned that Simpson may be refusing some treatment that might improve his health and quality of life, Simpson's refusal does not negate the fact that Simpson is likely experiencing a serious deterioration in physical or mental health because of the aging process. If such is the case, Simpson's circumstances would qualify as an extraordinary and compelling reason under application note 1(B) of the Sentencing Commission's policy statement, without regard to the sentencing disparity Simpson faces because of the First Step Act's amendments.

The court need not decide, however, whether the condition of Simpson's health would warrant relief under application note 1(B) in order to grant Simpson's motion for compassionate relief. Under the Tenth Circuit's holdings in *Maumau* and *McGee*, the court finds that Simpson's age, the length of the sentence he has already served, and the deterioration of his health constitute

additional circumstances, that when considered in combination with the sentencing disparity arising from the First Step Act's amendments to the sentencing provisions of Section 841, warrant a finding of extraordinary and compelling reasons for a sentence reduction under Section 3582(c)(1)(A).

**B.      Section 3553(a) Factors**

Having found that extraordinary and compelling reasons warranting a sentence reduction exist in this case, the court must next consider whether the factors set forth in 18 U.S.C. § 3553(a) support reducing Simpson's sentence.

After considering those factors, the court concludes that they support granting Simpson compassionate release. While the nature and circumstances of Simpson's offenses, and his prior history of criminal activity, are certainly serious—as reflected by his initial sentence—the crimes he was convicted of in this case were non-violent felonies that did not directly injure anyone. As reflected by the sentencing reforms enacted by the First Step Act, Congress has determined that the previously harsh penalties imposed for such non-violent drug offenses were too severe. The court agrees and determines that the nature of Simpson's crimes, while serious, do not warrant the life sentence that was originally imposed. Requiring Simpson to serve such a sentence, despite his age and deteriorating health, would not promote respect for the law. Nor would it constitute a just punishment when compared to the sentences that would be imposed, under current law, on defendants who commit similar crimes.

The court also concludes that requiring Simpson to remain incarcerated for the rest of his life would not significantly impact the deterrent effect that has resulted from the term of imprisonment he has already served. Simpson has served more than 13 years in prison for the

offenses at issue in this case, and several years for prior offenses. The government has not argued, and has pointed to no evidence that would show, that keeping Simpson incarcerated would enhance the deterrent effect resulting from the time Simpson has already served.

The government does assert that Simpson continues to pose a danger to the community, citing Simpson's original presentence report generally, but has provided no specific basis for finding that is the case. The court finds nothing in Simpson's presentence report, or elsewhere in the record, that would demonstrate that Simpson poses an abnormal risk to the community that would justify prolonging his incarceration.

Moreover, Simpson has shown some signs of reformation during the time he has served to date. While he does not have a perfect prison record, he has not had a serious violation of prison rules and has had no infractions in more than five years. (*See* PSR at 4-5, ECF No. 117.) He has also earned a college degree.

Simpson has also shown that he has strong family support that will assist him if he is released. Simpson's sister has visited him while he is in prison and has indicated that she is able and willing to house Simpson at her home in Colorado if he is released from prison. (*See* Probation Memorandum, attached hereto as Addendum 1). She has also indicated that she will provide Simpson with financial support until he is able to find other means of income. (*Id*.)

The court finds that the Section 3553(a) factors support granting Simpson's motion for compassionate release.

## Conclusion

For the reasons set forth above, the court finds that extraordinary and compelling reasons exist for reducing Simpson's sentence and that the sentencing factors set forth in Section 3553(a)

also support a reduction of Simpson's sentence pursuant to Section 3582(c)(1)(A). Accordingly, the court GRANTS Simpson's motion for compassionate release (ECF No. 113) and reduces sentence to time served, effective upon the entry of this order. The court further imposes a term of supervised release of 60 months with the standard conditions and with the conditions that Simpson submit to drug testing as directed by the U.S. Probation Office and comply with the release plan set forth in Addendum 1.

Dated this 21st day of February 2023.

BY THE COURT:

JUDGE CLARK WADDOUPS
United States District Judge

# **ADDENDUM 1**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## PROBATION AND PRETRIAL SERVICES OFFICE

### Memorandum

**DATE:** October 5, 2022
**TO:** The Honorable Clark Waddoups
Bryan N. Reeves
Nathan Phelps
**FROM:** Glen Manross
**SUBJECT:** Christopher W. Simpson Residential Plan; 2:08CR00554-001

I talked with Mr. Simpson's sister, Denise Gutierrez who verified she is able and willing to house the defendant if he receives a compassionate release. Ms. Gutierrez resides at 5461 South Sherman Street, in Littleton, Colorado, with her partner, Jennifer Gormley. The defendant will have his own bedroom, bath, and kitchen within an addition to the home that was built in 2016. Ms. Gormley is an attorney and Ms. Gutierrez a paralegal.

Ms. Gutierrez plans to provide the defendant with a cell phone and she will encourage him to further his education at nearby Arapahoe Community College. She and Ms. Gormley are prepared to support the defendant financially until he finds employment, veterans' benefits, social security, or other means of income.

Ms. Gutierrez will be forwarding pictures of the home and of the proposed living quarters she has prepared for Mr. Simpson.